```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 1 5 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT J. CROSBY and SAHARA CROSBY,

       Plaintiffs,

  -v-

A.O. SMITH WATER PRODUCTS CO., et al.,

       Defendants.
----------------------------------------------------------------X

14-cv-348 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

  Before the Court is Plaintiffs' motion to remand this action to state court for lack of subject matter jurisdiction. Dkt. No. 11. For the following reasons, the motion is denied.

**I. Background**

  Plaintiffs Robert J. Crosby and Sahara Crosby originally filed this action in New York state court against more than thirty Defendants. The substantive allegations in Plaintiffs' complaint occupy a single paragraph stating that Plaintiffs "repeat[] and reallege[]" the allegations in "Weitz & Luxenberg, P.C. Standard Asbestos Complaint for Personal Injury No. 7." Pet. Ex. 1 at 14. As elaborated in interrogatory responses provided to Defendants, Plaintiffs' core allegation is that Robert Crosby contracted lung cancer from his exposure to asbestos during his service in the U.S. Navy between 1960 and 1964, and that Defendants, who manufactured and supplied for the Navy products that contained asbestos, failed to furnish adequate warnings about asbestos's dangers. *See* Pet. ¶¶ 1–4; Pet. Ex. 2. A number of similar actions have been brought in courts around the country in recent years.

  One of the Defendants named in Plaintiffs' complaint is Crane Co. ("Crane"). On January 17, 2014, Crane filed a notice of removal, invoking 28 U.S.C. § 1442(a)(1). Dkt. No. 1. In its removal petition, Crane avers that the products it manufactured and supplied to the Navy,

1

including any warnings that accompanied those products, were subject to strict Navy specifications. Pet. ¶ 6. Under these circumstances, Crane argues, it cannot be liable to Plaintiffs because federal law preempts their state law failure-to-warn claims. *Id.* ¶ 14.

Plaintiffs filed the instant motion on February 7, 2014, and it was fully submitted as of February 28, 2014.

## II. Discussion

Plaintiffs raise two arguments in their motion to remand. First, they argue that Crane's removal petition was untimely. Second, they argue that Crane does not have the "colorable federal defense" required by 28 U.S.C. § 1442(a)(1), the removal statute that Crane has invoked. The Court will address these arguments in turn.

### A. Timeliness

As relevant here, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Crane states that it was served with Plaintiffs' state court complaint "[o]n or about December 20, 2013," Pet. ¶ 4, and it filed its notice of removal on January 17, 2014, less than 30 days later. Thus, this action was timely removed.

Plaintiffs do not contest Crane's assertion that it was served on December 20. Instead, they argue that the thirty-day removal period started running on December 12, when Crane received certain interrogatory responses from Plaintiffs "containing the information and allegations giving rise to Crane's purported government contractor defense." Pl. Br. at 6; *see* Pet. ¶¶ 2–3. It is not entirely clear to the Court why an exchange of interrogatories had already taken place when Crane was served. Plaintiffs filed their summons and complaint in state court on

December 10, so some Defendants may have been served earlier than Crane was,[1] and given that Defendants and Plaintiffs' counsel appear to be repeat players with respect to asbestos litigation, the interrogatories were likely somewhat pro forma. *See, e.g.*, Pet. Ex. 2 at 1 (Plaintiffs' responses to "Defendants' Fourth Amended *Standard* Set of Interrogatories and Request for Production of Documents" (emphasis added)).

In any event, Plaintiffs' timeliness argument fails. The thirty-day period starts running only when the defendant either is formally served with the complaint simultaneously with the summons or receives the complaint "by service or otherwise" after the summons has already been served. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, No. 02-cv-6438 (SAS), 2002 WL 31509881, at *2–3 (S.D.N.Y. Nov. 6, 2002). Even if that were not true and mere receipt of the complaint were a sufficient substitute for formal service (which it is not), *see Mermelstein v. Maki*, 830 F. Supp. 180, 182 (S.D.N.Y. 1993), Plaintiffs cite no authority suggesting that the receipt of an interrogatory response, as opposed to the complaint itself, would trigger the thirty-day removal period. The plain text of the statute refers to a "pleading."

It is true that under a different subsection of the removal statute, 28 U.S.C. § 1446(b)(3), the thirty-day removal period may be triggered by the defendant's "receipt" of a "pleading, motion, order, or other paper" that puts the defendant on notice of its federal defense. *See Levy v. A.O. Smith Water Prods. Co.*, No. 12-cv-5152 (SAS), 2012 WL 2878140, at *2–3 (S.D.N.Y. July 13, 2012). But that rule applies only when the case is *not* removable as "stated in the initial

---

[1] This fact would not affect the timeliness of Crane's petition. *See* 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").

3

pleading," which no one argues is the case here. 28 U.S.C. § 1446(b)(3). In short, this action was timely removed from state court.

### B.     Colorable Federal Defense

A civil or criminal action originally filed in state court may be removed to federal court if, among other things, the action is directed at "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Crane is not a federal officer, but it may invoke this removal statute if it was a "person acting under" a federal officer. To do so, Crane must (1) show that it is a "person" within the meaning of the statute who "act[ed] under" a federal officer, (2) show that it "performed the actions for which [it is] being sued 'under color of [federal] office,'" and (3) raise a "colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (first and third alterations in original). In this case, only the third requirement is at issue: Plaintiffs argue that Crane has not raised a colorable federal defense. Pl. Br. at 7. The Court disagrees.

A colorable federal defense must be "defensive" and "federal," and—where contractors are concerned—it must arise out of the defendant's duties "pursuant to [its] contractual relationship with the Federal Government." *Isaacson*, 517 F.3d at 139 (quoting *Mesa v. California*, 489 U.S. 121, 129–30 (1989)) (internal quotation marks omitted). "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Id.* (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

In its removal petition, Crane asserts the so-called "government contractor" defense. Pet. ¶ 6. This defense was originally developed in a design defect case, *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). In *Boyle*, the Supreme Court held that "[l]iability for design defects

4

in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512. This holding derived from the general principle that in areas involving "uniquely federal interests," state law is preempted and replaced by federal common law. *Id.* at 504 (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)) (internal quotation marks omitted).

Courts of appeals, including the Second Circuit, have extended *Boyle* to the failure-to-warn context. *See In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 629–30 (2d Cir. 1990). The Second Circuit has prescribed an arguably more demanding standard than some other circuits: the contractor must show that (1) "whatever warnings accompanied a product resulted from a determination of a government official, and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product"; (2) the contractor complied with the Government's directions; and (3) the contractor warned the Government of any dangers "known to it but not to the Government." *Id.* at 630 & n.4 (citation omitted); *cf., e.g., Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) (criticizing the Second Circuit's formulation as requiring too much government involvement).

Crane's defense is "defensive" and "federal," and it arises out of its contractual duty to manufacture products for the Navy. *Isaacson*, 517 F.3d at 139. The Court also concludes for the reasons detailed below that Crane's defense, as described in its removal petition, is sufficiently consistent with the Second Circuit's government contractor defense standard in failure-to-warn cases to rank as "colorable." *See id.* (approving district court's conclusion that "Defendants' assertions satisfy the particular requirements of the [government contractor] defense").

5

In mounting its federal defense at this stage of the proceeding, Crane asserts that any materials to which Robert Crosby would have been exposed in the Navy were manufactured according to Navy specifications and that warnings on the products also would have had to comply with those specifications. Pet. ¶ 6. According to Crane, "[t]he Navy's specifications governed not only the design and construction of Crane Co.'s products, but also the form and content of any labeling, product literature, or warnings supplied with the products." *Id.* ¶ 14. The Navy reviewed product literature that accompanied Crane's products and, "at its discretion, edited the wording of instructional material and warnings, approving certain warning language and disapproving other language." *Id.* Crane supports these assertions with affidavits attached to its removal petition, including ones from Rear Admiral David P. Sargent Jr. and Dr. Samuel Forman. These affidavits indicate that the Navy exercised significant control over the design and manufacture of the products Crane supplied, including the content of any warnings that accompanied them. *See* Sargent Aff. ¶¶ 58, 63, 67 (indicating that the Navy would not have permitted asbestos warnings); Forman Aff. ¶¶ 57–59 (similar). They also state that the Navy was well aware of asbestos risks, such that there was no need for Crane to warn the Navy of those dangers. *See* Forman Aff. ¶¶ 26–55.

Numerous courts in similar cases have found that Crane's averments and supporting affidavits, or ones much like them, present a "colorable" government contractor defense against failure-to-warn claims. *E.g., Leite v. Crane Co.*, 749 F.3d 1117, 1123–24 (9th Cir. 2014); *Holliday v. Crane Co.*, No. 12-cv-7615 (RJS), slip op. at 3–4 (S.D.N.Y. Aug. 19, 2013), ECF No. 61; *Crews v. Air & Liquid Sys. Corp.*, No. 12-cv-1678 (FJS/JEP), slip op. at 12 (N.D.N.Y. Feb. 18, 2014), ECF No. 165; *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 318–19 (E.D.N.Y. 2014); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). The Court agrees, and therefore declines to follow the cases relied on by Plaintiffs that reach the

opposite conclusion. *E.g., Cuomo v. Air & Liquid Sys. Corp.*, No. 13-cv-273 (SAS), 2013 WL 5913379, at *2–3 (S.D.N.Y. Nov. 1, 2013), *appeal docketed*, No. 13-4510 (2d Cir. Nov. 27, 2013); *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 144–49 (D. Mass. 2009).

Plaintiffs' arguments to the contrary involve parsing Crane's affidavits and contesting Crane's evidence in light of Plaintiffs' own submissions. Pl. Br. at 7–18. The Ninth Circuit recently rejected this kind of evidentiary attack on very similar affidavits submitted by Crane, also a defendant in that case, in another action brought by asbestos plaintiffs. *Leite*, 749 F.3d at 1123–24. The starting point for the Ninth Circuit's analysis was an analogy between a removal motion and a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), a defendant can mount either a "facial" or a "factual" attack on a plaintiff's jurisdictional allegations; when it mounts a "factual" attack—i.e., contesting the factual basis for the plaintiff's jurisdictional allegations via evidence outside the pleadings—the plaintiff cannot rely only on the complaint's allegations, but must present "competent proof," *id.* at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)), that shows by a preponderance of the evidence that subject matter jurisdiction exists. *See id.*; *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Extending this paradigm to the removal context, the Ninth Circuit held that in the face of the plaintiff's removal motion, Crane had to prove § 1442(a)(1)'s elements—including that it had a colorable federal defense—by a preponderance of the evidence. *Leite*, 749 F.3d at 1122. Under this standard, the Ninth Circuit panel found that affidavits like those submitted here by Crane provided sufficient proof that Crane had a colorable federal defense. *Id.* at 1123–24.

The Second Circuit has not weighed in on the precise standard for assessing whether a colorable federal defense has been raised. If the Ninth Circuit were correct that a defendant faced with a removal motion must submit "competent proof" and demonstrate that it has a

7

colorable federal defense by a preponderance of the evidence, this Court applying that standard would conclude that submissions like those made by Crane here are sufficient. However, in the Court's respectful view, the Ninth Circuit applied a more demanding standard than is appropriate. That is because, in the context of the removal statute's colorable federal defense requirement (which is the only disputed issue in this case), the analogy between removal motions and Rule 12(b)(1) motions fails to persuade. A federal defense is not a "jurisdictional fact"—like 28 U.S.C. § 1332's diversity and $75,000 amount-in-controversy requirements—for which Rule 12(b)(1)'s standards are suitable. *Hertz Corp.*, 559 U.S. at 96–97.

The reason the officer removal statute has been read to require a colorable federal defense is to ensure the presence of a federal question for purposes of Article III subject matter jurisdiction. *See Mesa*, 489 U.S. at 136 ("[I]t is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes."); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 364 F. Supp. 2d 329, 334 (S.D.N.Y. 2004); Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 771 (6th ed. 2009). In other words, the officer removal statute simply creates an exception to the "well-pleaded complaint" rule that ordinarily bars courts from looking to a defendant's answer for the presence of a federal question. *See Mesa*, 489 U.S. at 136–37; *Jefferson County v. Acker*, 527 U.S. 423, 446 (1999) (Scalia, J., concurring in part and dissenting in part).

When the well-pleaded complaint rule applies, the existence of a federal question is not akin to a jurisdictional fact such as a litigant's citizenship or the amount in controversy. In other words, in federal question cases brought under 28 U.S.C. § 1331, a defendant does not generally respond to a federal claim of dubious merit by bringing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the ground that the complaint's allegations find insufficient

8

support in the evidence. Instead, the validity of the claim is a merits question that implicates subject matter jurisdiction only under limited circumstances:

> [T]he district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685, 682–83 (1946)). Indeed, this standard is sometimes described as requiring that the federal claim be "colorable." *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable"); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 823 n.3 (1986) (Brennan, J., dissenting) ("[T]he federal question must be colorable and have a reasonable foundation."). The reason for this relaxed standard, of course, is that the litigation itself is devoted to assessing the evidentiary sufficiency of the complaint's allegations, so it would make little sense to require evidentiary support at the threshold.

Exactly the same is true for a federal defense: the point of removal is to litigate the defense in federal court. *See Jefferson County*, 527 U.S. at 423 (majority opinion) ("In construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" (quoting *Willingham*, 395 U.S. at 407)). And just as the Supreme Court has warned against treating the merits of a federal claim as jurisdictional, *see Steel Co.*, 523 U.S. at 89 ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not

9

implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."), it has also recognized—in interpreting a predecessor of the current officer removal statute—that "[t]he validity of the defence . . . has no connection whatever with the question of jurisdiction," *The Mayor v. Cooper*, 73 U.S. (6 Wall.) 247, 254 (1867) (emphasis added); *see also Mesa*, 489 U.S. at 128–29 (discussing *Cooper*). Thus, in both settings, imposing an evidentiary burden to get into federal court is putting the cart before the horse.

Indeed, the incongruousness of treating a colorable federal defense as a jurisdictional fact can be highlighted by asking what it actually means to prove by a preponderance of the evidence that a defense is colorable. It cannot mean the same thing as proving the defense itself by a preponderance of the evidence, because that is ultimate standard of proof in a civil case; "[t]he suit would be removed only to be dismissed." *Willingham*, 395 U.S. at 407; *see also Leite*, 749 F.3d at 1124 ("At this stage, Crane doesn't have to prove that its government contractor defense is in fact meritorious, and we express no view on whether it is."). Instead, the Ninth Circuit seemed to suggest that only a defense's *colorableness* must be proven by a preponderance of the evidence. *See Leite*, 749 F.3d at 1124 ("All that Crane must prove by a preponderance of the evidence is that its government contractor defense is 'colorable.'"). But that still leaves open the question of what "colorable" means.

In short, as far as the colorable federal defense requirement is concerned, it is this Court's view that the best analogy is not between removal motions and Rule 12(b)(1) motions, but between cases in which a plaintiff asserts a federal claim and cases in which a defendant asserts a federal defense. Based on this analogy, the Court concludes that for a federal defense to be "colorable," it need only be nonfrivolous in the sense described by the Supreme Court in *Bell v. Hood*. *See Jamison v. Wiley*, 14 F.3d 222, 238 n.17 (4th Cir. 1994) (federal defense was "colorable" because it was "not frivolous"). Although *Bell* involved statutory federal question

jurisdiction—whereas the colorable federal defense requirement is intended to satisfy Article III, *see Mesa*, 489 U.S. at 136—a claim that satisfies the statutory "arising under" standard logically must also satisfy the constitutional "arising under" standard. As described above, the Court is satisfied that Crane's federal contractor defense is neither frivolous nor advanced solely for the purpose for obtaining federal jurisdiction. That is all that is required.

To summarize: under either the "competent proof"/preponderance of the evidence standard imposed by the Ninth Circuit, or the "nonfrivolous" standard suggested by the Court's analogy to *Bell v. Hood*, Crane has established that it has a "colorable" federal defense.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion to remand this action to state court is DENIED. This resolves Docket No. 11.

On February 13, 2014, the Court adjourned the initial pretrial conference in this matter pending resolution of Plaintiffs' motion. Dkt. No. 36. Counsel for the parties are accordingly directed to appear for an initial pretrial conference on **October 3, 2014** at **10:45 AM** in Courtroom 906 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York. Counsel are directed to confer with each other prior to the conference regarding settlement and each of the other subjects to be considered at a Fed. R. Civ. P. 16 conference.

Additionally, in accordance with the Court's individual rules of practice in civil cases, the parties are directed to ECF file a proposed Civil Case Management Plan and Scheduling Order no later than seven days before the initial pretrial conference. The parties should use the form available at the Court's website.[2] Along with the proposed Civil Case Management Plan and

---

[2] http://nysd.uscourts.gov/judge/Nathan.

Scheduling Order, the parties are directed to submit a joint letter, not to exceed five pages, that provides the following information in separate paragraphs:

1. A brief statement of the nature of the action and the principal defenses thereto;

2. A brief description of any discovery that has already taken place, and that which will be necessary for the parties to engage in meaningful settlement negotiations;

3. A list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any;

4. The estimated length of trial; and

5. Any other information that the parties believe may assist this Court in resolving the action.

SO ORDERED.

Dated: August 15, 2014
        New York, New York

_____
ALISON J. NATHAN
United States District Judge